**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Samuel Barrons, | No. CV-23-02705-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Christopher Smallwood, et al., | |
| Defendants. | |

Pending before the Court is a motion for default judgment filed by Samuel Barrons ("Plaintiff"). (Doc. 23.) For the reasons that follow, Plaintiff is granted leave to file a supplemental brief regarding his wage claims and ordered to file a version of Plaintiff's declaration that is signed under penalty of perjury.

**BACKGROUND**

On December 26, 2023, Plaintiff filed the complaint. (Doc. 1.) The complaint names four defendants: (1) Christopher Smallwood ("Smallwood"); (2) Smallwood Behavioral, LLC ("Smallwood Behavioral"); (3) Erotes, Inc. ("Erotes"); and (4) Forefront PSI Inc. ("Forefront"). (*Id.* ¶¶ 2-8.) Smallwood "is a doctor, who is principal" of all three entity defendants. (*Id.* ¶ 19.)

The complaint alleges as follows. "Defendants, collectively, provide therapy services to customers utilizing the services of clinical therapists like Plaintiff," who was "employed by Defendant Christopher Smallwood in his personal capacity and his capacity as principal of Smallwood Behavioral, LLC, Erotes Inc., and Forefront PSI, Inc." (*Id.*

¶¶ 20-21.) "Plaintiff received pay from all Defendants at various points in his employment," but at times Defendants "ceased to pay" Plaintiff his wages and "then resumed," paid Plaintiff "surreptitiously . . . through apps such as Zelle" rather than issuing check stubs, "failed to pay all wages," "failed to account for necessary withholdings," "failed to inform Plaintiff of the withholdings that were not withheld," and finally, "[o]n or about June 12, 2023, Defendants ceased paying Plaintiff all wages" and "did not pay wages to Plaintiff again during the course of his tenure with Defendants." (*Id.* ¶¶ 22, 24-26, 30-31.) On or about July 19, 2023, Plaintiff resigned due to Defendants' "failure or refusal to pay him wages." (*Id.* ¶ 32.) Additionally, the complaint alleges that Plaintiff was entitled to "receive other benefits of employment such as health insurance and the reimbursement of business expenses," but "Defendants failed to reimburse Plaintiff for preapproved business expenses" from March 2023 through Plaintiff's resignation, and "[o]n or about June 12, 2023," Defendants cancelled Plaintiff's health insurance benefits without giving Plaintiff notice of the cancellation, such that Plaintiff "discovered the cancellation when he sought medical care and was informed that his health insurance through Defendants had been cancelled." (*Id.* ¶¶ 23, 27-29.)

The complaint also alleges that "Defendants" admitted liability by sending Plaintiff a text message that stated:

> I am not sure that Smallwood Behavioral, LLC can afford to pay you the amount that you are requesting monthly. The most I can afford to loan the company to pay you is around $1,000 per month. Even if I loan the company money, I am not sure that I would be able to afford loans to the company to pay you the amount that you are requesting. Can we bring the amount to 3x what you claimed was owed (~$8,000) and spread it over 2 years? I believe I can manage that. The failure of Smallwood Behavioral, LLC was due to a number of bad decisions, including keeping people on staff who did not have enough patients to pay for their own salaries. I did not want to leave people jobless, so I made the decision to pay people first before anything else. I was constantly waiting for the situation to improve. I apologize for any inconvenience this may cause. Please let me know if you have any questions.

(*Id.* ¶ 34.)

Based on these allegations, the complaint asserts the following seven causes of action: (1) "Prima Facie ERISA Violation" for cancelling Plaintiff's health insurance

without adequate notice; (2) "ERISA Breach of Fiduciary Duty" for cancelling Plaintiff's health insurance without adequate notice; (3) "ERISA Fraud" for cancelling Plaintiff's health insurance without adequate notice; (4) a claim for unpaid minimum wages under the Federal Labor Standards Act ("FLSA"), for "fail[ing] to pay Plaintiff any wages for hours worked after June 12, 2023 and periodically fail[ing] to pay Plaintiff any wages for hours worked prior to June 12, 2023, as discovery will further reveal"; (5) a claim for unpaid overtime under the FLSA, because Plaintiff "worked greater than 40 hours per week on a regular basis" but was not paid for any of his work during certain periods; (6) a claim for unpaid minimum wages under the Arizona Minimum Wage Act ("AMWA"); and (7) a claim for unpaid wages under the Arizona Wage Act ("AWA"). (*Id.* ¶¶ 35-88.) In the prayer for relief, Plaintiff seeks damages of "not-less-than $250,000." (*Id.* at 11.)

On January 26, 2024, Plaintiff filed proof of service as to Erotes and Forefront. (Docs. 6, 7.)

On February 15, 2024, Plaintiff filed proof of service as to Smallwood Behavioral. (Doc. 8.) This document indicates that process was served on "Karen, Receptionist, routinely authorized to receive and accept service of process for Registered Agents, Inc., Statutory Agent." (*Id.*)

On April 19, 2024, Plaintiff filed a motion for permission to serve Smallwood via alternative means. (Doc. 12.) That motion was granted. (Doc. 13.)

On May 7, 2024, Plaintiff filed proof of service as to Smallwood. (Docs. 16-18.)

On May 28, 2024, Plaintiff filed an application for entry of default as to all four defendants. (Doc. 19.) The following day, the Clerk entered the default. (Doc. 21.)

On June 11, 2024, Plaintiff filed the pending motion for default judgment. (Doc. 23.) No defendant has responded.[1]

---

[1] In response to Plaintiff's Rule 5 service of the application for entry of default and the motion for default judgment, non-party Zong Ly, "[o]n behalf of Registered Agents, Inc.," wrote two letters to Plaintiff's attorney, cc'ed to the Court, indicating that "Registered Agents, Inc. is not the registered agent for Smallwood Behavioral, LLC." (Docs. 22, 24.) However, no Defendant has appeared (specially or otherwise) to contest the validity of service or to otherwise move to set aside default and there is every reason to believe that Smallwood Behavioral is aware of this action, given that Smallwood, who is Smallwood Behavioral's principal, was properly served. *See generally Chan v. Soc'y*

**DISCUSSION**

I.    Default Judgment

    A.    **Legal Standard**

The "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).[2] Although the Court should consider and weigh relevant factors as part of the decision-making process, it "is not required to make detailed findings of fact." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The following factors may be considered when deciding whether default judgment is appropriate: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether the default was due to excusable neglect, and (7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering the merits and sufficiency of the complaint, the court accepts as true the complaint's well-pled factual allegations, but the plaintiff must establish the damages sought in the complaint. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

    B.    **The First, Fifth, Sixth, and Seventh *Eitel* Factors**

The first *Eitel* factor weighs in favor of default judgment. Defendants have not participated in this action at all—they have not responded to the complaint or to the motion for default judgment. If Plaintiff's motion is not granted, Plaintiff will be without other recourse for recovery. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). For similar reasons, the fifth and sixth *Eitel* factors weigh in favor of default

---

*Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994) ("Rule 4 is a flexible rule that should be liberally construed to uphold service so long as a party receives sufficient notice of the complaint.").

[2] Rule 55(b) provides two ways of seeking default judgment: (1) "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person"; and (2) "In all other cases, the party must apply to the court for a default judgment." Whereas the Clerk "must" enter judgment under Rule 55(b)(1), the Court has discretion when default judgement is sought pursuant to Rule 55(b)(2). Although Plaintiff asserts that his claim is for a "sum certain" (Doc. 23 at 4), Plaintiff seeks default judgment via a motion, and therefore Rule 55(b)(2) applies.

judgment—there is no indication that Defendants' failure to participate is due to excusable neglect, and their non-participation means there is no possibility of factual disputes.

In contrast, the seventh *Eitel* factor weighs against default judgment, given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. The mere existence of Rule 55(b), however, "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177.

### C. **The Fourth *Eitel* Factor**

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct.

In the motion for default judgment, Plaintiff seeks four categories of damages to be imposed jointly and severally against all four Defendants: (1) $231 "for medical bill incurred after employer cancelled the provided health insurance plan without notice"; (2) $11,524.50 "for loss wages in violation of the [AWA] authorizing the recovery of treble the amount of unpaid wages"; (3) $2,250 "for unpaid invoices for supervision expenses which were supposed to be reimbursed according to the employment agreement"; and (4) $1,200 "for the personal loan from Plaintiff's mother in light of the lack of payment by Defendants for Plaintiff's mortgage." (Doc. 23 at 1-2.)

Here, the money at stake is relatively modest—Plaintiff seeks a total of $15,205.50 when his four claimed categories of damages are aggregated. Thus, the fourth factor weighs in favor of default judgment.

### D. **The Second And Third *Eitel* Factors**

The second and third *Eitel* factors "are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Id*.

In an action like this one, where Defendants have not participated at all, the main issue to be resolved by a judge presented with a motion for default judgment is usually

whether the complaint adequately states a claim as to each claim for which default judgment is sought. *See, e.g.*, *Bradley v. Bradley*, 2023 WL 2574222, *6 (D. Ariz. 2023) ("Although the first, fourth, and sixth *Eitel* factors weigh in favor of Plaintiff's request, the second and third factors—which are often considered the most important—weigh strongly against default judgment.  Simply put, Plaintiff's Complaint fails to sufficiently state any claims for relief . . . .  This failure by Plaintiff necessitates a denial of his request for default judgment, given the general rule disfavoring judgments by default in the interest of deciding cases upon their merits.").

It would behoove a plaintiff seeking default judgment to make this analysis the crux of his motion—*i.e.*, to lead the Court through each claim, setting forth the elements of the claim with proper citations to binding and/or persuasive legal authority, and then citing the paragraphs of the complaint that, taken as true, show that each element is met. Unfortunately, litigants frequently give this analysis short shrift, merely stating in conclusory fashion that the complaint is sufficient without discussing, in detail, what must be shown to prevail on each cause of action.  The pending motion is no exception.  The section of Plaintiff's motion devoted to the second and third *Eitel* factors is three paragraphs long—and one of those paragraphs is a strange non sequitur, seeking attorneys' fees under A.R.S. § 12-341.01, which gives the Court discretion to award attorneys' fees in "any contested action arising out of a contract," which has nothing to do with the sufficiency of the complaint or the merits of the claims.  (This action is not contested and does not arise out of a contract, so that request is denied.)  The other two paragraphs state that "Plaintiff has adequately pled his claims for which he may recovery [sic] under Arizona law with respect to loss [sic] wages" and note that Plaintiff has alleged missing wages.  No mention is made, in this section, of the ERISA claims, of the claim for $2,250 in work-related expenses that were not reimbursed, or of the claim for $1,200 related to the loan from Plaintiff's mother.

Although Plaintiff has provided little help, the Court will forge ahead.

…

### 1. ERISA

Although "ERISA imposes a fiduciary duty of timely notification of plan cancellation, and . . . breach of such a duty may give rise to equitable remedies," *Peralta v. Hisp. Bus., Inc.*, 419 F.3d 1064, 1069 (9th Cir. 2005), damages are not an equitable remedy. *Id.* at 1076 ("While the ERISA fiduciary had an obligation to provide timely notification to the participants of the termination of coverage, no remedy is available here. It is for Congress to provide a remedy where merely negligent administration results in the termination of coverage without timely notice, and no plan exists under which benefits may be paid."). Thus, Plaintiff cannot recover damages under ERISA for medical bills he paid due to lack of coverage.

### 2. Work-Related Reimbursements

Plaintiff has provided no authority for the notion that he may seek reimbursement of work-related expenses under any of the wage statutes pleaded in the complaint and cited in his motion. Nor does the complaint assert a breach-of-contract claim. Accordingly, Plaintiff has not established an entitlement to the requested $2,250 in work-related expenses.

### 3. Loan From Plaintiff's Mother

The money that Plaintiff's mother lent to him is not an additional source of damages. That money was lent to cover an expense Plaintiff could not pay without his missing wages. Thus, the missing wages themselves (perhaps with statutory trebling) is the remedy—additional recovery to pay back the loan would be duplicative.

### 4. Wage Claims

The complaint asserts wage claims under the FLSA, the AMWA, and the AWA, but the motion for default judgment only mentions the AWA. (Doc. 23 at 2.) It is unclear whether Plaintiff intended to forgo two of the three wage claims or merely was trying to draw attention to the fact that he is seeking trebling of the unpaid wages pursuant to A.R.S. § 23-355, a statute within the AWA that allows an employee to recover "an amount that is treble the amount of unpaid wages" for any violation of Chapter 2 of Title 23 of the Arizona

Revised Statutes, which includes both the AMWA and the AWA.[3]

If Plaintiff intends to forgo default judgment as to his FLSA and AMWA claims, this may limit his ability to recover as to Smallwood. An FLSA claim can be brought against "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and an AMWA claim likewise can be brought against an "individual . . . acting directly or indirectly in the interest of an employer in relation to an employee." 23 A.R.S. § 23-362(B). An AWA claim, in contrast, can be brought against "any individual . . . employing any person," A.R.S. § 23-350(3), which has been interpreted to exclude "individual liability against the owners, officers, and directors of a corporate employer in a case where the claim is for the employer's wholesale failure to pay wages." *Rosen v. Fasttrak Foods LLC*, 2021 WL 2981590, *5 (D. Ariz. 2021).

Furthermore, the Court is concerned that the allegations in the complaint may be insufficient to support what appears to be a theory that the four Defendants (Smallwood and his three owned entities) should be treated as joint employers (or possibly as alter egos) because each of them has, at some point, issued payment to Plaintiff. (Doc. 1 ¶¶ 7, 9, 22.) The Court notes that one of Plaintiff's exhibits is an employment offer letter that specifies that Plaintiff was hired by "The Smallwood Clinic, LLC and Smallwood Behavioral, LLC," and there is no explanation offered by Plaintiff as to how the other two entity Defendants are his employers. The act of issuing payment is certainly an act that employers take, but that act is not entirely exclusive to employers—sometimes another company is hired to handle payroll (although that does not appear to have been done here). On default judgment, the Court assumes the truth of well-pleaded allegations, but the Court is not convinced that alleging that all Defendants acted in concert is enough to establish that all Defendants were Plaintiff's employers for purposes of AWA—although for purposes of

---

[3] The trebling provision of A.R.S. § 23-355 is discretionary. But trebling of damages is already mandatory for AMWA claims pursuant to A.R.S. § 23-354(G) ("Any employer who fails to pay the wages or earned paid sick time required under this article shall be required to pay the employee the balance of the wages or earned paid sick time owed, including interest thereon, and an additional amount equal to twice the underpaid wages or earned paid sick time.").

the FLSA and AMWA the allegations might be sufficient.

Finally, the Court also notes that Plaintiff's declaration, which is the only potentially cognizable evidence of his damages, is not signed under penalty of perjury.

### E.     **Conclusion**

Having weighed the *Eitel* factors, Plaintiff is not entitled to default judgment on his ERISA claim for $231 in damages, on his claim for $2,250 in damages related to unreimbursed work-related expenses, or on his claim for $1,200 in damages arising from the personal loan from his mother.

As for Plaintiff's wage claim(s), as noted above, the motion does not explain with clarity whether Plaintiff seeks default judgment only on the AWA claim or also on the FLSA and/or AMWA claims and fails to provide arguments demonstrating that the complaint is sufficient to establish each Defendant's liability as to each claim.  The Court will afford Plaintiff the opportunity to submit a supplemental brief that remedies the deficiencies identified in this order.  Plaintiff must also submit evidence in the form of a declaration under penalty of perjury, such that the Court has, from the papers, all that is necessary to grant or deny relief, with or without a hearing.  2 Gensler, Federal Rules of Civil Procedure: Rules and Commentary, Rule 55, (2022) ("A live evidentiary hearing [on damages] is not always required.  Rather, the hearing requirement can be satisfied by the submission of affidavits or other proper documentary evidence if doing so will create a record sufficient for the court to decide the matters before it.").  *See also Ullico Cas. Co. v. Abba Shipping Lines, Inc.*, 891 F.Supp.2d 4, 7 (D.D.C. 2012) ("While the entry of default establishes the Defendant's liability, the Court is required to make an independent determination of the amount of damages to be awarded, unless the amount of damages is certain.  In instances where the amount of damages is not certain, the court may hold a hearing, but is not required to do so as long as there is a basis for determining damages for purposes of the default judgment.  In making an independent determination, the court may rely on detailed affidavits or documentary evidence.") (citations and internal quotation marks omitted).

Accordingly,

**IT IS ORDERED** that Plaintiff, within 30 days of the issuance of this order, may file a supplemental brief in relation to his wage claims that remedies the deficiencies identified above and must file a declaration signed by Plaintiff under penalty of perjury in support of Plaintiff's wage-related damages request.

Dated this 24th day of October, 2024.

Dominic W. Lanza
United States District Judge